<u>NOT FOR PUBLICATION</u>

```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| MARISOL MORENO o/b/o<br>MARICELIS MORENO<br><br>         Plaintiff,<br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security<br><br>         Defendant. | Civ. No. 04-3758 (WGB)<br><br>O P I N I O N |

<u>APPEARANCES</u>

LANGTON & ALTER
P.O. Box 1798
2096 St. Georges Avenue
Rahway, New Jersey 07065
By:  Abraham S. Alter

     Counsel for Plaintiff

Christopher J. Christie
United States Attorney
c/o Social Security Administration
Office of General Counsel
26 Federal Plaza, Rm 3904
New York, New York 10278-0004
By:  Peter S. Krynski
     Special Assistant U.S. Attorney

     Counsel for Defendant


**BASSLER, SENIOR DISTRICT JUDGE:**

     Marisol Moreno ("Moreno") brings this action on behalf of her minor child Maricelis Moreno ("Maricelis") pursuant to 42 U.S.C. 405(g) of the Social Security Act.  Moreno requests that

the Court reverse or, in the alternative, remand the final determination of the Commissioner of Social Security ("Commissioner") denying Moreno's application for Child's Supplemental Security Income ("SSI") benefits.  For the following reasons, the Court denies Moreno's request and **affirms** the Commissioner's decision.

I.   BACKGROUND

Maricelis was born on September 11, 1993.  (Tr. at 64.) On October 16, 2001, Moreno filed for SSI benefits on behalf of Maricelis, claiming disability since June 1, 1995 due to severe asthma.  Id.  Moreno claims that Maricelis suffered from six documented attacks of asthma during the twelve month period from March, 2002 to March, 2003.  (Pl.'s Br. at 15.)

The Social Security Administration denied Maricelis' application initially (Tr. at 43) and upon reconsideration (Tr. at 48).  Moreno appealed, requesting a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 55.)  On June 5, 2003, Moreno appeared before ALJ Richard L. DeSteno and testified on behalf of her daughter.  (Tr. at 27-37.)  On July 14, 2003, ALJ DeSteno issued a decision concluding that Maricelis is not disabled and therefore not entitled to SSI benefits.  (Tr. at 15-22.)  In his decision, ALJ DeSteno made the following findings:

1.  The claimant (Maricelis) has not engaged in substantial gainful activity since the alleged onset of disability (20 CFR § 416.972).

2. The claimant has asthma, which is a severe impairment (20 CFR § 416.924(c)).

3. The allegations by the claimant's mother regarding the claimant's total disability are not established for the reasons set forth in the decision.

4. The limitations resulting from the effects of the claimant's impairment do not meet, medically equal, or functionally equal the criteria of any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4 (20 CFR § 416.924(d)).

5. The claimant does not have a medically determinable physical or mental impairment that results in marked and severe functional limitations.

6. The claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.924(d)).

(Tr. at 21-22.)

The Appeals Council denied Moreno's request for review finding no basis for changing the ALJ's decision. (Tr. at 5-6.) Moreno then filed this appeal.

II. APPLICABLE LAW

A. Standard of Review

This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The scope of this Court's review is limited to determining whether the Commissioner's factual findings are supported by "substantial evidence" that no disability exists. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 410 (1971); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Substantial evidence is defined as "more than a mere scintilla . . . [and]

such relevant evidence as a reasonable mind might accept as adequate." Richardson, 402 U.S. at 401 (quoting Consol. Edison Co. V. N.L.R.B., 305 U.S. 197, 229 (1938)). Even though the record may contain evidence that conflicts with the ALJ's decision, the decision shall be affirmed so long as there is substantial evidence to support it. Brown v. Brown, 845 F.2d 1211, 1213 (3d Cir. 1988).

    B.   Statutory Framework for Children Seeking SSI Benefits Based on Disability

The statute applicable to children seeking SSI disability benefits provides:

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner determines a child's eligibility for SSI benefits based on a three-step sequential evaluation process. Under this process, to obtain benefits, the child claimant must show: (1) that she is not working; (2) that she has a "severe" impairment or combination of impairments; and (3) that the impairment or impairments meet, medically equal, or functionally equal one or more of the "listed" impairments in 20 C.F.R. § 404, Subpart P, App. 1. See 20 C.F.R. § 416.924.

4

If functional equality under step three is reached, the regulations provide that functional limitations will be evaluated in terms of six domains:

    i.   Acquiring and using information;
    ii.  Attending and completing tasks;
    iii. Interacting and relating with others;
    iv.  Moving about and manipulating objects;
    v.   Caring for yourself; and
    vi.  Health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

An impairment is deemed to functionally equal the listed impairments if the claimant has "marked" limitations in two of these six domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

C.   ALJ's Discussion of Evidence

The Third Circuit Court of Appeals has repeatedly held that a reviewing court cannot conclude that an ALJ's findings are supported by substantial evidence "unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits." Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of HEW, 567 F.2d 258, 259 (4th Cir. 1977)). A court cannot adequately review an administrative decision if an ALJ fails to provide "not only an expression of the evidence he considered which supports the result, but also some indication of the evidence which was rejected." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). Otherwise, the court has no way of knowing whether probative

evidence was either discredited or simply ignored.  Id.

III. DISCUSSION

Moreno alleges that the ALJ's decision was unsupported by substantial evidence because, contrary to the ALJ's determination, Maricelis' asthma meets the requirements of § 1.03B of the Commissioner's listing of impairments.  She argues that the ALJ erred by considering only three of Maricelis' hospital treatments for asthma at Trinitas Hospital while ignoring her three treatments at University Hospital.  Moreno further alleges that the ALJ failed to adequately explain the basis for finding that Maricelis's condition did not meet, medically equal, or functionally equal the severity of a listed impairment. The Court concludes, however, that the ALJ was correct in denying Maricelis SSI benefits and did provide sufficient support for that decision.

    A.    Whether Maricelis' Condition Medically Equals any Listed Impairment

To qualify for disability based on asthma attacks, an applicant must show that he or she suffered from:

> [a]ttacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03B (2004).

According to Listing § 3.00C,

> "Attacks of asthma . . . are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalation bronchodilator therapy in a hospital, emergency room, or equivalent setting.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00C (2004).

Moreno alleges that Maricelis suffered at least six asthma attacks in one year, thus qualifying as disabled under § 1.03B. At the hearing, Moreno's attorney submitted evidence of six hospital treatments: (1) March 21, 2002 at Trinitas Hospital; (2) March 29, 2002 at Trinitas Hospital; (3) October 1, 2002 at University Hospital; (4) December 10, 2002 at University Hospital; (5) December 27, 2002 at Trinitas Hospital; (6) March 24, 2003 at University Hospital. (Tr. at 26.)  Moreno also submitted a May 28, 2002 medical treatment for asthma by Maricelis's treating physician Dr. Georgina Abich.  Moreno therefore concludes that "plaintiff has 7 emergency room and emergency physician treatments for asthma in that one year alone."  (Pl.'s Br. at 15.)  Nevertheless, the ALJ stated in his decision that Maricelis's condition did not equal one of the Commissioner's listed impairments because:

> the claimant had one hospital admission in 2001 for her asthma . . . and three emergency room visits in 2002 due to her asthma . . . .  Thus, she does not meet the requirements of 103.03B which requires attacks, in spite of prescribed treatment requiring physician intervention, occurring at least once every two months or at least six times a year.

<u>Id.</u>  Therefore, Moreno asserts that the ALJ's failure to include the additional treatments is a "deliberate <u>Cotter</u> violation." (Pl.'s Br. at 15.)

An examination of the medical evidence demonstrates that the number of hospital treatments did not rise to the number of asthma attacks required by the listings for any consecutive twelve months during the relevant time period.  Maricelis did receive at least six treatments for asthma from March 21, 2002 to March 24, 2003, but not all treatments were for spontaneous attacks.  The record reveals that Maricelis only suffered three attacks during that time, as defined in Listing § 3.00C.  The first attack occurred on March 21, 2002.  Maricelis was treated for acute asthma and an upper respiratory infection in the emergency room of Trinitas Hospital.  (Tr. at 163.)  The second attack occurred between the morning of March 28, 2002 until the early morning of March 29, 2002.  On the morning of March 28, Dr. Abich treated Maricelis at her office for "a persistent cough, difficulty breathing and a lot of wheezing."  (Tr. at 185.)  That same night, at 11:13 PM, Maricelis was treated for bronchitis, acute asthma, and early pneumonia at Trinitas Hospital due to difficulty breathing since the morning.  (Tr. at 253.)  She was discharged at 2:50 AM on March 29, 2002.  (Tr. at 257.)  Contrary to Moreno's assertion, because these two visits were due to a single "prolonged symptomatic episode" occurring within a 24 hour

period, the symptoms on March 28 and March 29 constitute a single attack.  The third attack occurred on December 27, 2002, in which Maricelis received treatment for asthma without status at Trinitas Hospital.  (Tr. at 228-237.)

In terms of the other three alleged attacks at University Hospital, Dr. Helen Aguila, a physician in the Pediatric Pulmonary Group at University Hospital, did examine Maricelis on October 1, 2002, December 12, 2002, and March 24, 2003.  (Tr. at 197-203.)  But as the Commissioner points out, these visits were not for attacks.  Id.  It is clear from the record that these visits were scheduled appointments in which Dr. Aguila examined Maricelis, monitored her health through pulmonary function reports, prescribed medication, and scheduled the next appointment.  Id.  The Medication Instruction Sheets written by Dr. Aguila show a medication schedule and instructions based on the symptoms that Maricelis exhibited on a particular day.  (Tr. at 197, 200, 202.)  These sheets are consistent with a prescribed treatment rather than a spontaneous attack requiring physician intervention.  They do not indicate evidence of attacks comparable to the evidence submitted from Trinitas Hospital.

According to the Medication Instruction Sheet, although Maricelis's next appointment was scheduled for November 11, 2002 (Tr. at 202), she did not visit Dr. Aguila again until December 12, 2002 (Tr. at 200).  This strongly suggests that the

9

Maricelis' condition was being adequately controlled by her prescribed medication.  Likewise, although Maricelis had a scheduled appointment for February 18, 2003 (Tr. at 200), Maricelis did not visit Dr. Aguila again until March 24, 2003 (Tr. at 197).  Thus, the ALJ justifiably determined that Maricelis did not suffer the requisite six attacks in 2002.

Contrary to Moreno's assertion, the ALJ did not violate <u>Cotter</u> by failing to mention conflicting evidence.  <u>Cotter</u> requires "an explanation from the ALJ of the reason why <u>probative</u> evidence has been rejected . . . so that a reviewing court can determine whether the reasons for rejection were improper."  642 F.2d at 707 (emphasis added). Even though the ALJ did not specifically mention why he rejected evidence of the additional treatments, this evidence was clearly not probative to the ALJ's determination of disability.  The Court finds no reason to have included the visits to Dr. Aguila in the calculation of attacks in 2002.  Therefore any possible error in the ALJ's failure to discuss the additional treatments was harmless.

    B.    Whether the ALJ Adequately Explained the Basis for Finding that Maricelis is not Disabled

Moreno claims that when conducting the sequential evaluation of Maricelis' disability, the ALJ submitted his "presumptive, self-serving denial without bothering to explain how the evidence led to the conclusion." (Pl.'s Br. at 10.)  Aside from making

10

other general statements regarding the lack of explanation, Moreno claims that the ALJ improperly relied on the medical opinions of the State Agency physicians.  Id. at 13.

The Court finds that the ALJ reasonably concluded that Maricelis's impairment did not functionally equal any listed impairment.  In making the functional equivalence determination, the ALJ considered the treatment notes of various physicians, testimony by Moreno at the hearing, as well as a teacher questionnaire completed by Maricelis's third grade teacher.  In Burnett v. Comm'r of SSA, 220 F.3d 112, 119-20 (3d Cir. 2000), the Third Circuit Court of Appeals remanded the case for further discussion of the evidence because the ALJ's conclusory statement was "beyond meaningful judicial review."  Here, unlike Burnett, the ALJ presented more than bare conclusory statements and adequately discussed probative evidence of Maricelis's impairments.  The ALJ does not need to "use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  Jones v. Barnhart, 364 F.3d 501, 506 (3d Cir. 2004) (citing Burnett, 220 F.3d at 120).

The ALJ cited the evidence to which he gave significant weight as well as the evidence he discounted in deciding that the record did not support functional equivalence.  The ALJ reviewed

11

the evaluation of Dr. Nelson L. Turcios, a pediatric pulmonologist to whom Maricelis was referred by Dr. Abich.  (Tr. at 18-19.)  Dr. Turcios found that Maricelis suffered from Mild Persistent Asthma, complicated by Allergic Rhinitis, but that her physical exam revealed a "healthy appearing school age girl in no respiratory distress."  (Tr. at 18-19, 216.)  The ALJ also summarized Maricelis's inpatient hospitalization from April 29, 2001 to May 6, 2001 for status asthmaticus and bronchopneumonia, and her outpatient treatments on March 21, May 29, and December 27, 2002 for various respiratory problems related to her asthma.  (Tr. at 19.)  Furthermore, the ALJ described the consultative evaluation by Dr. R. C. Patel, in which Dr. Patel diagnosed Maricelis with chronic asthma, causing mild obstructive lung disease.  (Tr. at 19, 190-92.)  The ALJ noted that he did not accord significant weight to the teacher questionnaire because Maricelis's serious limitations at school, including problems acquiring and using information, "are clearly not related to the claimant's sole severe impairment of asthma."  (Tr. at 20.)  The ALJ summarized Moreno's testimony regarding Maricelis's medical needs and physical limitations as well.  Id.  Noting that Maricelis's own treating physician described Maricelis as only a "moderate persistent asthmatic patient," the ALJ concluded that the testimony and medical evidence do not support Moreno's claim of disability.  Id.

Moreno asserts "the ALJ simply announced his findings without any explanation and conveniently found plaintiff not to suffer an extreme limitation in any one of the six domains or a marked limitation in any of the two domains." (Pl.'s Br. at 9-10.)  In fact, the ALJ listed each of the six domains, finding that Maricelis demonstrated a "slight limitation" in the first, second and third domains, a "moderate limitation" in the fourth and sixth domains, and "no limitations" in the fifth domain. Because a "marked" limitation means a limitation that is "more than moderate" but "less than extreme," Maricelis did not meet the functional equivalence requirement of "marked" limitations in two domains or "extreme" limitation in one.  20 C.F.R. § 416.926a(b)(2)(i).

In addition, the Court finds Moreno's argument that the ALJ improperly relied on the evaluations by State Agency physician groundless.  Moreno asserts that "the fact that the State Agency physician did not find plaintiff to meet the listings is not only irrelevant but intentionally misleading.  This Court will never see a case in which a State Agency physician finds a plaintiff to meet the listings." (Pl.'s Br. at 13.)  Because this Court's review of the Commissioner's decision is limited to determining whether that decision is supported by substantial evidence, Hartrandt v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999), the Court declines to address the merits of Moreno's sweeping allegations.

13

Moreno does not cite any authority in stating that State Agency physicians find that a listing is met in only three to four percent of cases or that the ALJs have found "literally hundreds of thousands of applicants" to meet the listings whereas none of those applicants met the listings according to the State Agency. (Pl.'s Br. at 13-14.)  The Court finds no reason to question the ability of the State Agency physicians to accurately assess an applicant's disability.  Moreover, "State agency physicians . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation.  Therefore, administrative law judges must consider findings of State agency medical and psychological consultants . . . as opinion evidence, except for the ultimate determination about whether you are disabled."  20 C.F.R. § 416.927(f)(2)(i).  The ALJ's decision, read as a whole, is supported by substantial evidence that Maricelis's condition does not meet, medically equal, or functionally equal any listed impairment.

IV.  CONCLUSION

For the reasons stated above, this Court **affirms** the Commissioner's decision to deny Maricelis SSI benefits.

An appropriate Order follows.

   /s/ William G. Bassler
William G. Bassler, U.S.S.D.J.

DATED: August 30, 2005